UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CVS PHARMACY, INC., RITE AID CORPORATION, and RITE AID HDQTRS. CORP., | |
| Plaintiffs, | No. 19-cv-9999 (CM) |
| -against- | |
| ASTRAZENECA PHARMACEUTICALS L.P., ASTRAZENECA L.P., ASTRAZENECA UK LIMITED, HANDA PHARMACEUTICALS, LLC, PAR PHARMACEUTICAL, INC., and ACCORD HEALTHCARE, INC., | |
| Defendants. | |
| WALGREEN CO., THE KROGER CO., ALBERTSONS COMPANIES, INC., and H-E-B, L.P., | |
| Plaintiffs, | No. 19-cv-10049 (CM) |
| -against- | |
| ASTRAZENECA PHARMACEUTICALS L.P., ASTRAZENECA L.P., ASTRAZENECA UK LIMITED, HANDA PHARMACEUTICALS, LLC, PAR PHARMACEUTICAL, INC., and ACCORD HEALTHCARE, INC., | |
| Defendants. | |
| HY-VEE INC., | |
| Plaintiff, | |
| -against- | No. 20-cv-4483 (CM) |
| ASTRAZENECA PHARMACEUTICALS L.P., ASTRAZENECA L.P., ASTRAZENECA UK LIMITED, HANDA PHARMACEUTICALS, | |

LLC, PAR PHARMACEUTICAL, INC., and
ACCORD HEALTHCARE, INC.,

                                    Defendants.

**ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER**

McMahon, C.J.:

In these three cases, retailer plaintiffs CVS Pharmacy, Inc. ("CVS"), Rite Aid Corporation and Rite Aid Hdqtrs. Corp. (collectively, "Rite Aid") (*see* 19-cv-9999 ("CVS Dkt.")); Walgreen Co. ("Walgreen"), The Kroger Co. ("Kroger"), Albertsons Companies, Inc. ("Albertsons") and H-E-B, L.P. ("HEB") (*see* 19-cv-10049 ("Walgreen Dkt.")); and Hy-Vee, Inc. ("Hy-Vee") (*see* 20-cv-4483 ("Hy-Vee Dkt.")) (collectively, the "Retailers") bring antitrust claims against Defendants AstraZeneca Pharmaceuticals L.P. and AstraZeneca L.P. (collectively, "AstraZeneca"), AstraZeneca UK Ltd. ("AZ UK"), Handa Pharmaceuticals, LLC ("Handa"), Par Pharmaceutical, Inc. ("Par"), and Accord Healthcare, Inc. ("Accord") (collectively, "Defendants"). These cases are member cases of the lead direct purchaser class action – *JM Smith Corporation v. AstraZeneca Pharmaceuticals L P et al.*, No. 19-cv-7233 (the "Lead Case" or "Lead Dkt.") – and arise out of the same facts.

The Retailers bring their separate actions on behalf of themselves and their respective wholesalers: McKesson Corporation ("McKesson"), Cardinal Health, Inc. ("Cardinal"), and Amerisource-Bergen Drug Corporation ("Amerisource") (collectively, the "Wholesalers"). The Wholesalers purchased Seroquel XR directly from Defendants for resale to the Retailers, and have assigned their direct purchaser claims arising out of those purchases to the Retailer to whom they resold the drugs. Thus, although the Retailers are not direct purchasers of Seroquel XR themselves, they bring their direct purchaser claims as assignees of the Wholesalers.

In the Lead Case, as well as in these three cases, AstraZeneca, AZ UK, Handa, and Par move to dismiss for lack of jurisdiction or improper venue; or in the alternative, to transfer. (Lead Dkt. No. 68; CVS Dkt. No. 34; Walgreen Dkt. No. 12; Hy-Vee Dkt. No. 8). By this Court's order dated August 11, 2020, the Lead Case was transferred to the District of Delaware. (Lead Dkt. No. 90 ("Transfer Order").)

The Retailers adopt the arguments raised by the named plaintiff in the Lead Case – J M Smith Corporation d/b/a, Smith Drug Company ("Smith") – and advance their own identical arguments in opposition to Defendants' motions to dismiss. (*See* CVS Dkt. No. 40 at 2; Walgreen Dkt. No. 24 at 2; Hy-Vee Dkt. No. 8).

Defendant Accord – which was not named as a defendant in the Lead Case – moves separately to dismiss the Retailer actions for lack of personal jurisdiction and improper venue, or in the alternative, to transfer to the District of Delaware pursuant to 28 U.S.C. § 1404 or § 1406. (CVS Dkt. No. 29; Walgreen Dkt. No. 18; Hy-Vee Dkt. No. 8.)  The Retailers rely on identical arguments in opposition. (CVS Dkt. No. 41 at 2; Walgreen Dkt. No. 26 at 2; Hy-Vee Dkt. No. 8). Accordingly, they will be addressed together.

For the reasons stated below, Defendants' motions to transfer are GRANTED.

## BACKGROUND

*A. Parties*

CVS is a Rhode Island corporation headquartered in Woonsocket, Rhode Island. (CVS Dkt. No. 1 at ¶ 28 ("CVS Compl.").) During the proposed class period, McKesson and Cardinal each purchased Seroquel XR from Defendants for resale to CVS and has assigned its claims arising out of those purchases to CVS. (*Id.*)

Both Rite Aid plaintiffs are Delaware corporations headquartered in Camp Hill, Pennsylvania. During the proposed class period, McKesson purchased Seroquel XR directly from Defendants for resale to Rite Aid and has assigned its claims arising out of those purchases to Rite Aid. (*Id.* ¶ 29.)

Walgreen is an Illinois corporation headquartered in Deerfield, Illinois. (Walgreen Dkt. No. 1 at ¶ 28 ("Walgreen Compl.").) During the proposed class period, Amerisource purchased Seroquel XR directly from Defendants for resale to Walgreen and has assigned its claims arising out of those purchases to Walgreen. (*Id.*)

Kroger is an Ohio corporation headquartered in Cincinnati, Ohio. During the proposed class period, Cardinal purchased Seroquel XR directly from Defendants for resale to Kroger and has assigned its claims arising out of those purchases to Kroger. (*Id.* ¶ 29.)

Albertsons is a Delaware corporation headquartered in Boise, Idaho. Inexplicably, Albertsons alleges that McKesson purchased a drug called Zeita directly from Merck for resale to Albertsons' subsidiaries. It makes no specific claim about its purchases of Seroquel XR. (*Id.* ¶ 30.)

HEB is a Texas limited partnership headquartered in San Antonio, Texas. (*Id.* ¶ 31.) Like Albertsons, HEB alleges that McKesson purchased Zeita from Merck for resale to HEB, but makes no claim about its purchases of Seroquel XR. (*Id.*)

Hy-Vee is an Iowa corporation headquartered in West Des Moines, Iowa. (Hy-Vee Dkt. No. 1 at ¶ 28 ("Hy-Vee Compl.").) It is a member of Topco Associates, LLC ("Topco"), a group purchasing organization. During the proposed class period, McKesson purchased Seroquel XR directly from AstraZeneca for resale to Hy-Vee and other Topco members. McKesson has assigned its claims for overcharges arising out of those purchases to Topco, who in turn assigned those claims to Hy-Vee. (*Id.*)

4

AstraZeneca L.P. was a Delaware limited partnership headquartered in Wilmington, Delaware. It was dissolved on December 31, 2018, and all of its assets and liabilities were assumed by AstraZeneca Pharmaceuticals L.P. (Aff. of Matthew Bowden ¶¶ 4–5, Lead Dkt. No. 68-7.)

AstraZeneca Pharmaceuticals L.P. is a Delaware limited partnership headquartered in Wilmington, Delaware. (CVS Compl. ¶ 31.)

AZ UK is a U.K. company headquartered in London, United Kingdom. (*Id.* ¶ 32.)

Handa is headquartered in San Jose, California. (*Id.* ¶ 33.) While the Retailers assert that Handa is a California LLC (*id.*), Handa explains that while it was previously a California LLC, in September 2016 Handa was registered as a Delaware LLC. (Aff. of Stephen D. Cary ¶¶ 3, 8, Lead Dkt. No. 68-9.)

Par is a Delaware corporation headquartered in Chestnut Ridge, New York. (CVS Compl. ¶ 34.) Prior to March 2015, Par maintained its principal place of business in Woodcliff Lake, New Jersey. (*See* Decl. of Terrell T. Stevens, Lead Dkt. No. 82-1.)

Accord is a North Carolina corporation headquartered in Durham, North Carolina. (CVS Compl. ¶ 35.)

B. *Nature of the Actions*

These cases arise from two alleged conspiracies between and among Defendants to delay and suppress competition for generic versions of AstraZeneca's branded quetiapine fumarate extended-release tablets, Seroquel XR®. Since these cases are based on identical facts as the Lead Case, I will not recite the facts at length here. (*See* Lead Dkt. No. 90 at pp. 2-4.)

In short, generics manufacturers Handa and Accord were the first to file Abbreviated New Drug Applications ("ANDAs") for different strengths of generic Seroquel XR – for Handa, the 50, 150, 200, and 300mg strengths; for Accord, the 400mg strength. AstraZeneca sued Handa and

Accord, alleging that their ANDAs infringed its patent that protected Seroquel XR. Around October 1, 2011, AstraZeneca entered into two settlement agreements – one with Handa (which was assigned to Par in 2012), and the other with Accord. Under the settlement agreements, Handa and Accord agreed to delay their launches of generic Seroquel XR (in their respective strengths) until November 1, 2016, and AstraZeneca agreed not to launch an authorized generic ("AG") Seroquel XR until May 1, 2017.

The Retailers and the Wholesalers were harmed by the allegedly unlawful settlement agreements because (a) no generic Seroquel XR was available until November 1, 2016 and (b) only one generic was available for six months thereafter, until May 1, 2017. Absent the settlement agreements, (a) generics would have entered the market sooner and (b) AstraZeneca's AG would have launched at the time those generics entered the market – such that the Retailers and the Wholesalers could have acquired extended-release quetiapine fumarate at significantly lower prices substantially earlier.

The Retailers assert five causes of action under the Sherman Act:

Counts I and II assert violations of Section 1 and Section 2, respectively, against AstraZeneca, Handa, and Par as to the 50, 150, 200, and 300mg strengths of Seroquel XR (*Id.* ¶¶ 159-74);

Counts III and IV assert violations of Section 1 and Section 2, respectively, against AstraZeneca and Accord as to the 400mg strength of Seroquel XR (*Id.* ¶¶ 175-89); and

Count V asserts a violation of Section 2 against AstraZeneca for monopolization and monopolistic scheme (*Id.* ¶¶ 190-95).

## C. Relevant Contracts

As in the Lead Case, Defendants assert that each Wholesaler has an agreement with AstraZeneca covering, *inter alia*, the purchases of Seroquel XR, for which the Retailers seek to recover overcharge damages. (*See* Mem. in Supp. of Mot. to Dismiss, CVS Dkt. No. 35 at 3.) These Wholesale Distribution Services Agreements between AstraZeneca and each of McKesson, Cardinal, and Amerisource ("Wholesaler Agreements") contain many of the same or substantially similar terms as the 2016 Amendment to the Wholesale Distribution Services Agreement between AstraZeneca and Smith in the Lead Case ("DS Agreement"). (*Compare* Ex. 3 to Defs.' Mot. to Dismiss, Lead Dkt. No. 68-6 *with* Exs. D, E, & F to CVS Dkt. No. 71.)

Notably, the Wholesaler Agreements contain the same forum selection clause as the DS Agreement:

> **Jurisdiction.** The parties hereby irrevocably and unconditionally consent to the exclusive jurisdiction of the state or federal courts in the State of Delaware for any action, suit or proceeding arising out of or relating to this Agreement, and agree not to commence any action, suit or proceeding related thereto except in such courts.

(Ex. D § 16.2, Ex. E § 14.2, Ex. F § 17.2 (emphasis original).) Like the DS Agreement, the Wholesaler Agreements are governed by Delaware law. (*See* Ex. D § 16.1, Ex. E § 14.1, Ex. F § 17.1.) Additionally, the Wholesaler Agreements contain the same or substantially similar terms regarding each Wholesaler's maintenance of inventory levels and stable purchasing levels for all relevant strengths of Seroquel XR. (*See* Exs. D, E, and F §§ 3.1, 3.2, Attach. A-1, B.)[1]

---

[1] The Wholesalers have asked the court to redact allegedly commercially sensitive terms from any publicly-filed versions of the Wholesaler Agreements, including specifically Sec. 3.2, which, they argue, sets out the specific purchasing or inventory requirements by which each Wholesaler must abide. (*See* CVS Dkt. No. 71.) The request is granted only to the extent of redacting from Sec. 3.2 of any individual Wholesaler Agreement the actual purchasing or inventory requirements to which that Wholesaler is subject. The fact that the Wholesalers are required to purchase and/or maintain in inventory certain amounts of drugs is a common practice in the industry, not a proprietary trade secret. Indeed, that fact is already part of the public record in the Lead Case. However, the precise

### D. *Defendants' Motions to Dismiss*

Defendants AstraZeneca, AZ UK, Handa, and Par move to dismiss all claims for lack of personal jurisdiction under Federal Rule of Procedure 12(b)(2) and improper venue of Rule 12(b)(3). In the alternative, they ask this court to transfer these cases to the District of Delaware under either § 1404 or § 1406. Defendant Accord makes an identical motion.

For the reasons discussed below, Defendants' motions to transfer are GRANTED.

## ANALYSIS

In this case, it is prudent to address the motions to transfer before dealing with the issue of personal jurisdiction. *See Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979). Defendants contest this court's personal jurisdiction over all Defendants except for Par. However, all Defendants are either subject to general personal jurisdiction in the District of Delaware, or consent to such jurisdiction for the purposes of this case. "In such circumstances, it seems prudentially appropriate to address venue first since a decision to transfer would render personal jurisdiction analysis with respect to this district irrelevant." *Basile v. Walt Disney Co.*, 717 F. Supp. 2d 381, 385 (S.D.N.Y. 2010). Accordingly, this court will address Defendants' motions to transfer first.

Under 28 U.S.C. § 1404(a), "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

In the Second Circuit, when considering a motion to transfer pursuant to § 1404(a), courts generally apply a two-step analysis. First, the court must determine whether the action could have

---

extent of that requirement for any individual Wholesaler is not something that should be, or needs to be, disclosed; for purposes of the analysis in this opinion, it is sufficient to note every Wholesaler Agreement includes a "Stable Purchasing Levels" term as part of Sec. 3.2, and that in each such agreement the term is sufficiently similar to the analogous term in the DS Agreement at Sec. 3.2 as to make the analysis of the latter pertinent to the former.

been brought in the proposed transferee forum. If so, the court must determine whether convenience of the parties and witnesses and the interests of justice favor transfer. *See P.E.A. Films, Inc. v. Metro-Goldwyn-Mayer, Inc.*, No. 14-cv-726, 2014 WL 6769377, at *1 (S.D.N.Y. Nov. 12, 2014) (internal quotations and citations omitted).

At step one, the Retailers do not contest that this case could have been brought in the District of Delaware. Each Defendant is subject to personal jurisdiction in Delaware: AstraZeneca, Par, and Handa are incorporated in Delaware, and AZ UK and Accord consent to jurisdiction in Delaware for the purposes of these cases.

At step two, Defendants ordinarily bear the burden of making a "clear and convincing" showing that transfer is proper. *See New York Marine & Gen. Ins. Co. v. Lafarge N. Am.*, Inc., 599 F.3d 102, 114 (2d Cir. 2010). But here, Defendants move to transfer the case under § 1404(a) to enforce the forum selection clause in the Wholesaler Agreements. *See Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 52 (2013) [hereinafter *Atlantic Marine*]. If the forum selection clause applies, the motion should be granted "unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *Id.*

## I.    Transfer Based on Forum Selection Clauses

As noted above, the Wholesaler Agreements mirror AstraZeneca's DS Agreement with Smith in the Lead Case. They contain the same broad forum selection clause whereby the parties "irrevocably and unconditionally consent to the exclusive jurisdiction of the state or federal courts in the State of Delaware for any action, suit or proceeding arising out of or relating to this Agreement, and agree not to commence any action, suit or proceeding related thereto except in such courts." (Ex. D § 16.2, Ex. E § 14.2, Ex. F § 17.2.) Additionally, the Wholesaler Agreements contain similar terms governing each Wholesaler's purchases of Seroquel XR; namely, the weekly

maintenance of specific inventory levels and purchases within the specified stable purchasing range. (*See id.* at §§ 3.1, 3.2.)

In short, the Wholesaler Agreements contain terms that are the same or substantially similar[2] to the terms in the DS Agreement that were material to this court's analysis in Lead Case. Thus, for the same reasons articulated in this court's Transfer Order in the Lead Case, the forum selection clause in the Wholesaler Agreements should be enforced and the cases transferred to Delaware. (*See* Lead Dkt. No. 90 at Part I, pp. 7-15.)

The Retailers' arguments to the contrary are without merit.

*First*, the Retailers suggest that as assignees, they are not bound by the forum selection clause in the Wholesaler Agreements because they are not seeking to enforce the Wholesalers' rights under those agreements.

This argument is wrong.

It is "elementary ancient law that an assignee never stands in any better position than his assignor. He is subject to all the equities and burdens which attach to the property assigned because he receives no more and can do no more than his assignor." *Molina v. Faust Goetz Schenker & Blee, LLP*, 230 F. Supp. 3d 279, 285 (S.D.N.Y. 2017) (quoting *Int'l Ribbon Mills, Ltd. v. Arjan Ribbons, Inc.*, 36 N.Y.2d 121 (1975)). The same is true under Delaware law. *See Madison Fund, Inc. v. Midland Glass Co.*, No. 394-cv-A-1974, 1980 WL 332958, at *2 (Del. Super. Ct. Aug. 11, 1980) (internal citations omitted).

---

[2] Under its Wholesaler Agreement, McKesson "will endeavor to maintain" weekly inventory levels. (Ex. E. § 3.1.) The fact that this term is not mandatory does not alter this court's finding that the Wholesaler Agreement sets certain parameters for McKesson's purchases of Seroquel XR. Accordingly, the Retailers' antitrust claims asserted on behalf of McKesson still "touch on" its performance of the Wholesaler Agreement with AstraZeneca, and thus, the forum selection clause reaches these claims. *See ASDC Holdings, LLC v. Richard J. Malouf 2008 All Smiles Grantor Retained Annuity Tr.*, No. cv-A-6562, 2011 WL 4552508, at *5 (Del. Ch. Sept. 14, 2011) (quoting *Parfi Holding AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 155 (Del. 2002)).

Here, the Wholesalers assigned their claims to the Retailers, not their contracts. (CVS Compl. ¶¶ 28-29, Walgreen Compl. ¶ 28-31, Hy-Vee Compl. ¶ 28.) Accordingly, whatever claims the Retailers assert on behalf of the Wholesalers are subject to the same limitations as if the Wholesalers had brought the claims themselves. Thus, like direct purchaser Smith in the Lead Case, the Wholesalers – and by assignment, the Retailers – are subject to the forum selection clause in their agreements with AstraZeneca.

*Second*, the Retailers argue that the forum selection clause in the Wholesaler Agreements does not reach their antitrust claims. They invoke a footnote in *Hartig Drug Co. Inc. v. Senju Pharmaceutical Co.*, 836 F.3d 261 (3d Cir. 2016) to support their argument that federal courts have interpreted similar forum selection clauses narrowly in the antitrust context.

As explained at length in the Transfer Order, the broad forum selection clause reaches antitrust claims arising from the purchases of Seroquel XR that were governed by the agreements containing the forum selection clause – here, the Wholesaler Agreements. The Retailers' reliance on *Hartig* is misplaced and does not alter this analysis. This footnote – which is purely dicta – notes a potential interpretation of a narrow (limited to the "rights and obligations hereunder") anti-assignment clause under Pennsylvania law. *Id.* at 275 n.17. It has no bearing on the broad forum selection clause at issue here, which this court must interpret under Delaware law.

*Third*, the Retailers argue that even if the forum selection clause did apply – which it does – it would only reach a portion of their claims. Specifically, they claim the clause does not reach their claims against AstraZeneca that predate the Wholesaler Agreements, or to any claims against the remaining Defendants. Even so, these are not "extraordinary circumstances" that would cause this court to disregard the forum selection clause altogether. *See Atlantic Marine*, 571 U.S. at 52.

The Retailers assert that courts have court set aside an applicable forum selection clause rather than enforce it against parties who never agreed to it – even where the designated forum was the defendant's home state. But the cases they cite are inapposite.

In *Woods v. Christensen Shipyards, Ltd.*, No. 04-61432-cv, 2005 WL 5654643 (S.D. Fla. Sept. 23, 2005), the motion before the court was not a motion to transfer the entire action under § 1404(a), but rather a motion to dismiss certain claims in light of a clause specifying Washington state court as the chosen forum. *See id.* at *4. In that case, "the result of enforcement of the forum selection clause would be parallel proceedings in different forums on the same set of facts and legal issues." *Id.* at *11. Here, on the contrary, transfer would prevent parallel proceedings.

In *Eastcott v. McGraw-Hill Global Education Holdings, LLC*, No. cv-16-904, 2016 WL 3959076, *1 (E.D. Pa. July 22, 2016), the forum selection clause reached only 19 of the plaintiff's 274 copyright infringement claims. Accordingly, the court proceeded to weigh the usual § 1404(a) factors and concluded that they weighed against transfer – especially because "[j]udicial economy heavily favors litigating all claims together." *See id.* at *3–*4. Here, as explained in detail below, the balance of the § 1404(a) factors weighs decidedly in favor of transfer, and transfer is the only way to litigate all direct purchaser claims together.

In short, the Retailers have not convinced this court to deviate from its analysis of the forum selection clause as articulated in the Transfer Order in the Lead Case. Accordingly, the Retailers' claims against AstraZeneca that are covered by the forum selection clause – i.e., those arising from purchases that postdate the Wholesaler Agreements – should be transferred.

And so should the claims that are not subject to the forum selection clause.

## II.     Transfer Based on the § 1404(a) Factors

As explained in the Transfer Order, when a mandatory forum selection clause governs some, but not all, of the parties or claims in a given case, courts in this district evaluate whether transfer of the remaining claims is appropriate under all of the § 1404(a) factors. *See, e.g.*, *Androb Jewelry Serv., Inc. v. Malca-Amit USA, LLC*, No. 16-cv-5171, 2017 WL 4712422, at *9 (S.D.N.Y. Sept. 25, 2017).

Under § 1404(a), courts consider the following factors:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, . . . (7) the relative means of the parties . . . (8) the forum's familiarity with the governing law, and (9) trial efficiency and the interest of justice.

*Pence v. Gee Grp., Inc.*, 236 F. Supp. 3d 843, 850 (S.D.N.Y. 2017) (internal citations and quotations omitted). Here, the balance of these factors favors transfer.

### A.  Plaintiff's Choice of Forum

Generally, courts give a plaintiff's choice of forum "considerable weight." *See Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 748 (S.D.N.Y. 2013).

However, the fact that a plaintiff is "is not a citizen of the Southern District of New York and has no particular connection to the Southern District of New York diminishes the deference afforded its choice to litigate here." *City of Pontiac Gen. Employees Ret. Sys. v. Dell Inc.*, No. 14-cv-3644, 2015 WL 12659925, at *4 (S.D.N.Y. Apr. 30, 2015) (citing *Zepherin v. Greyhound Lines Inc.*, 415 F. Supp. 2d 409, 411 (S.D.N.Y. 2006)). Here, not a single one of the Retailer plaintiffs resides in this district. They hale from Rhode Island, Pennsylvania, Illinois, Ohio, Idaho, Texas, and Iowa.

There is some connection between the operative facts – at least as to the alleged conspiracy between AstraZeneca, Handa, and Par – and the chosen forum, but it is minimal at best. *See id.* Par – a Rockland County enterprise – allegedly failed to introduce a generic sooner and eventually sold generic Seroquel XR at allegedly supra-competitive prices. But Par is a Delaware corporation, which means that there is no particular reason why it should not be sued in that district. There is no connection between the alleged AstraZeneca/Accord conspiracy and this district. The Retailers' observation that the Wholesalers – none of which is incorporated in or headquartered in New York – have in the past purchased other AstraZeneca pharmaceuticals (not Seroquel XR) from their New York locations is irrelevant to the transfer analysis.

Finally, because the forum selection clause in the Wholesaler Agreements creates exclusive venue in, *inter alia*, the District of Delaware as to some of the Retailers' claims, and the remaining claims are factually related, the Retailers' choice of forum merits less weight. *See Androb*, 2017 WL 4712422 at *9.

Therefore, the Retailers' choice of forum is entitled to substantially less deference than usual and weighs only slightly in favor of transfer.

## B. *Convenience of the Witnesses*

Defendants note that the current and former AstraZeneca employees who negotiated the allegedly-anticompetitive patent settlement agreements work in or near Wilmington, Delaware. Accord's current and former employees work in or near Durham, North Carolina, but Accord notes that Delaware would be more convenient for those willing to travel for case-related proceedings. The Retailers contend that witnesses will be deposed where they live and work, and any convenience to AstraZeneca's witnesses is counterbalanced by the added inconvenience to Par's New York-based witnesses.

This factor would be neutral but for the fact that this court has already transferred the Lead Case to the District of Delaware. This court expects that the testimony of most – if not all – AstraZeneca, Handa, Par, and Accord witnesses will pertain equally to Smith's claims in the Lead Case and the Retailers' claims in these cases. "[T]hose witnesses will be spared much inconvenience by being called to testify in a single trial in a single location." *Bent v. Zounds Hearing Franchising, LLC*, No. 15-cv-6555, 2016 WL 153092, at *7 (S.D.N.Y. Jan. 12, 2016) (citing *DISH Network, L.L.C. v. Am. Broad. Companies, Inc.*, No. 12-cv-4155, 2013 WL 1091318, at *3 (S.D.N.Y. Mar. 15, 2013)). Accordingly, this factor weighs in favor of transfer. *See id.*

### C. Convenience of the Parties

As noted above, the Retailers are not located in the Southern District of New York, but rather in Rhode Island, Pennsylvania, Illinois, Ohio, Idaho, Texas, and Iowa. The Retailers would have to travel whether this case was heard in New York City or Wilmington. So would AZ UK, Handa, and Accord, which are located in the United Kingdom, California, and North Carolina, respectively. In fact, with the exception of CVS, each Retailer's headquarters are roughly equidistant from – if not slightly *closer* to – the District of Delaware than the Southern District of New York.

Moreover, "because trying all claims in a common forum is far more efficient than bifurcating them, transfer to [Delaware] will save money and enhance convenience for [Defendants]." *See Bent*, 2016 WL 153092, at *7. Transfer would greatly diminish Defendants' inconvenience without shifting that burden to the Retailers or adding to the Retailers' inconvenience. Thus, the relative convenience of the parties favors transfer. *See id.*

### D.  Trial Efficiency and the Interest of Justice

Turning to the public interest factors, as explained in the Transfer Order, Defendants' alleged antitrust scheme is not a localized controversy, and conditions for a speedy litigation are no more favorable in this district than in the District of Delaware. As in the Lead Case, the parties' principal arguments concern the public interest in hearing related claims in a single forum.

Defendants argue that keeping some cases in New York while others proceed in Delaware would be inefficient and raise the risk of inconsistent outcomes.

The Retailers respond that because this court is the proper venue for all claims and has jurisdiction over all parties, this court need not transfer these cases to ensure that all related cases are litigated in a single forum.

The fatal flaw in the Retailers' argument is that this court has already transferred the Lead Case to the District of Delaware in order to enforce the forum selection clause between Smith and AstraZeneca. The only way to ensure that all related cases are litigated in a single forum is to transfer these cases as well. The public interest weighs heavily in favor of transfer because:

> It would be wasteful in the extreme if discovery and trial of these matters were to be duplicated in two different districts. Courts have routinely recognized this principle in granting transfers under section 1404 where related claims were already proceeding in another district or had to be transferred to another district pursuant a forum selection clause.

*Pence*, 236 F. Supp. 3d at 854 (collecting cases).

Here, the Retailers' claims are nearly identical to Smith's claims in the Lead Case. There are substantial benefits of consolidating these cases with the Lead Case in a common forum – the District of Delaware. Transfer would serve "the strong policy interests of achieving efficient pretrial discovery, avoiding duplicative litigation, and avoiding inconsistent results." *Everlast*, 928

F. Supp. 2d at 747 (quoting *Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Am. Boat Co., LLC*, No. 11-cv-6804, 2012 WL 1382278, at *3 (S.D.N.Y. Apr. 20, 2012)) (collecting cases).

The one difference between these cases and the Lead Case is that the Retailers bring their claims based on the 400mg strength Seroquel XR – Counts III and IV – against Accord in addition to AstraZeneca. But this distinction supports transfer. The issue of whether this court has personal jurisdiction over Accord is hotly contested, whereas all Defendants – including Accord – are either incorporated in Delaware, or have submitted to its jurisdiction for the purposes of this litigation.

Moreover, even if this court were to put aside the fact that the Lead Case was transferred, "numerous courts have held, the fact that the forum selection clause indisputably governs [some] of the claims in this case, and that the remaining claims are factually related to those [] claims, weighs strongly in favor of transfer." *Androb*, 2017 WL 4712422, at *9 (collecting cases). As explained in the Transfer Order, transfer to the District of Delaware serves judicial economy by keeping this action together *and* honors the forum selection clause in the Wholesaler Agreements.

The interest of justice weighs heavily in favor of transfer.

*E. Remaining Factors*

Defendants concede that many of the remaining factors – the location of documents and ease of access to sources of proof, the relative means of the parties, the forum's familiarity with the governing law – are irrelevant.

In sum, the convenience of the witnesses, the convenience of the parties, and trial efficiency and the interest of justice – all of which favor transfer – outweigh the diminished weight of the out-of-state Retailers' choice of forum. "There is no rigid formula for balancing these factors and no single one of them is determinative. Instead, weighing the balance is essentially an equitable

task left to the Court's discretion." *Citigroup Inc. v. City Holding Co.*, 97 F.Supp.2d 549, 561 (S.D.N.Y. 2000) (citations and internal quotation marks omitted).

This court finds that transfer is warranted under § 1404(a) as to all claims against all Defendants.

## CONCLUSION

Defendants' motions to transfer the case to the District of Delaware are GRANTED. This constitutes the decision and order of the court. It is a "written opinion." The Clerk of Court is respectfully directed to close the open motions at CVS Dkt. Nos. 29 and 34, Walgreen Dkt. Nos. 12 and 18 from the court's list of open motions; and transfer all three cases to the United States District Court for the District of Delaware.

Dated:  August 12, 2020
      New York, New York

         Chief Judge

BY ECF TO ALL PARTIES